# EXHIBIT A
# PART 1

# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
09/27/2013
CT Log Number 523586800

TO:     Marlin Goebel
        Forest City Trading Group, LLC
        10250 SW Greenburg Road
        Portland, OR 97223-

RE:     **Process Served in Delaware**

FOR:    Seaboard International Forest Products, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Craftwood Lumber Company, etc., Pltf. vs. Seaboard International Forest Products, LLC, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Attachment(s), Summons, Return, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Lake County Circuit Court, IL<br>Case # 13L661 |
| **NATURE OF ACTION:** | Appointing plaintiff as representative for the plaintiff class and awarding plaintiff an incentive award for its efforts as class representative , awarding statutory damages in the minimum amount, plaintiff seeking damages |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/27/2013 at 11:45 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons on you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Charles R. Watkins<br>Guin, Stokes & Evans LLC<br>321 South Plymouth Court<br>Suite 1250<br>Chicago, IL 60604<br>312-878-8391 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 796793993081<br>Email Notification, Marlin Goebel marlin.goebel@fctg.com |
| **SIGNED:** | The Corporation Trust Company |
| **PER:** | Melanie McGrath |
| **ADDRESS:** | 1209 Orange Street<br>Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of 1 / BK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Division of Corporations - Online Services

https://delecorp.delaware.gov/tin/controller

Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

*CT*

### Department of State: Division of Corporations

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request
How to Form a New
Business Entity
Certifications, Apostilles
& Authentication of
Documents

Frequently Asked Questions   View Search Results

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 3875134 | Incorporation Date / Formation Date: | 11/01/2004 (mm/dd/yyyy) |
| Entity Name: | SEABOARD INTERNATIONAL FOREST PRODUCTS, LLC | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | THE CORPORATION TRUST COMPANY | | |
| Address: | CORPORATION TRUST CENTER 1209 ORANGE ST | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19801 |
| Phone: | (302)658-7581 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.
Would you like &#9678; Status &#9678; Status,Tax & History Information   Submit

Back to Entity Search

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

## SUMMONS

### IN THE NAME OF THE PEOPLE IN THE STATE OF ILLINOIS, IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

Craftwood Lumber Company )
)
)
)
)
) No. *13 L 661*
)
**Plaintiffs)**

vs.

Seaboard International Forest )
Products, LLC )
)
)
)
)
**Defendants)**

To each of the above-named defendants:

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in this complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

SEAL OF COURT

WITNESS Keith Brin, Clerk of said Circuit Court, and the seal thereof at Waukegan, Illinois, this _____ day of SEP 10 2013 A.D., 20_____

KEITH BRIN, Clerk

Plaintiff's Attorney:
(or plaintiff, if he be not represented by attorney) *Charles R Watkins*

Date of Service: _____, 20 _____
(To be inserted by officer on copy left with defendant or other person.)

Address *321 S. Plymouth Ct. Ste. 1250*
Telephone *312-878-8391* *Chicago, IL 60604*

171-138 Rev 8/00

SHERIFF'S FEES

( Service and return ........................................$_____
(
( Miles_____.................................$_____
(
( Total..............................................................$_____

_____

Sheriff of _____ County

I certify that I served this summons on defendants as follows:

(a)-(Individual defendants – personal):
(The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant).

_____

_____

_____

(b)-(Individual defendants – abode):
By leaving a copy of the complaint at the usual place of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons.  (The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person).

_____

_____

_____ and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of defendant | Mailing Address | Date of mailing |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(c)-(Corporate defendants):
By leaving a copy and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant corporation | Registered agent, officer or agent | Date of Service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(d)-(Other service):

_____

_____

_____, Sheriff of _____ County

By: _____
(Deputy)

**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**

**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Seaboard International Forest Products, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 1 3 L 6 6 1<br><br>**Class Action**<br><br>**Complaint for Violations of the Junk Fax Prevention Act (47 U.S.C. § 227 and 47 C.F.R. § 64.1200); Demand for Jury Trial; Exhibits** |

Plaintiff Craftwood Lumber Company ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, and alleges:

**Introduction**

1.     More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") was enacted into law. The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without the prior permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005 ("JFPA").[1] As amended,

---
[1]     Unless otherwise noted, all statutory references are to this statute.

1

the law, together with regulations adopted by the Federal Communications Commission thereunder ("FCC regulations"), require a sender to include in its faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future faxes and explains how to exercise that right.

2.     Plaintiff brings this class action to recover damages for and to enjoin junk faxing by Defendant Seaboard International Forest Products in violation of the JFPA and FCC regulations.   Defendant's violations include, but are not limited to, the facsimile transmission of advertisements on September 16, 2009, and August 12, 2011, to Plaintiff, true and correct copies of which advertisements are attached as Exhibits 1 and 2.

3.     **Standing, Jurisdiction and Venue.**  This Court has subject matter jurisdiction over this matter and Plaintiff has standing to seek relief in this Court because § (b)(3) authorizes commencement of an action in an appropriate state court to obtain damages for Defendant's violations of the JFPA and/or FCC regulations, to obtain injunctive relief, or for both such actions.  Venue is proper in this Court because Defendant's sending of junk faxes to this County, including to Plaintiff.

**The Parties**

4.     **Individual Plaintiff/Class Representative.**  Plaintiff Craftwood Lumber Company is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Illinois, with its principal place of business in Highland Park, Illinois.  Plaintiff is, and at all times relevant hereto was, the subscriber of the facsimile telephone number (847) 831-2805 to which junk faxes, including those attached as Exhibits 1 and 2, were sent by Defendant.

2

5.    **Defendant Seaboard International Forest Products, LLC.** Defendant
Seaboard International Forest Products, LLC, is, and at all times relevant hereto was, a
limited liability company organized and existing under the laws of the state of Delaware,
having its principal place of business in Nashua, New Hampshire. Unless otherwise
indicated, Defendant Seaboard is referred to throughout this Complaint as "Seaboard" or
"Defendant."

### The JFPA's Prohibition Against Junk Faxing

6.    By the early 1990s, advertisers had exploited facsimile telephone
technology to blanket the country with junk fax advertisements. This practice imposed
tremendous disruption, annoyance, and cost on the recipients. Among other things, junk
faxes tie up recipients' telephone lines and facsimile machines, misappropriate and
convert recipients' fax paper and toner, and require recipients to sort through faxes to
separate legitimate faxes from junk faxes and discard the latter. Congress responded to
the problem by passing the TCPA. The TCPA was enacted to eradicate "the explosive
growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317
(1991).

7.    In the decade following the TCPA's enactment, however, American
consumers and businesses continued to be "besieged" by junk faxes because senders
refused to honor requests by recipients to stop. FCC, Report and Order on
Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm.
Reg. 830 ¶ 186 (2003). Congress responded by strengthening the law through the JFPA.
The JFPA, for the first time, required senders to clearly and conspicuously disclose on
their faxes that recipients have the right to stop future faxes and to explain the means by
which recipients can exercise that right (hereinafter collectively the "Opt-Out Notice

3

Requirements"). § (b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vi).

## Seaboard's Junk Fax Program

8.    Seaboard is a nationwide distributor and trader of building supplies. Commencing within four years preceding the filing of this Complaint, Seaboard conducted a fax-blasting program to advertise the sale of its products. The fax transmissions not only promoted Seaboard's products, but also the company's website, which was a service and itself an advertisement for the company and its products. These fax transmissions include, but are not limited to, those sent on September 16, 2009, and August 11, 2011, attached as Exhibits 1 and 2, respectively, to this Complaint.

9.    Plaintiff did not give Defendant prior express invitation or permission as defined in the JFPA (§ (a)(5)) to send Exhibits 1 and 2 to this Complaint or any other junk faxes. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant blasted Exhibits 1 and 2 and other junk faxes at issue without obtaining prior express invitation or permission from other recipients. In sending these faxes, Defendant also failed to include the disclosures required by the Opt-Out Notice Requirements, in further violation of the JFPA and FCC regulations.

## Class Action Allegations

10.    **Class Definition**. The Plaintiff Class consists of all persons and entities that were at the time subscribers of telephone numbers to which a facsimile transmission was sent, commencing within four years preceding the filing of this action, which facsimile transmission discusses, describes, or promotes Defendant's property, goods or

4

services, including, without limitation, the facsimile transmission of Exhibits 1 and 2 attached hereto ("Plaintiff Class"). Plaintiff reserves the right to amend the class definition following completion of class certification discovery.

11. **Statutory Reference.** This action is properly maintainable as a class action under authority of Code of Civil Procedure section 2-801 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) Plaintiff and Plaintiff's counsel as the proposed class representative and class counsel will fairly and adequately protect the interest of the class; and (d) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

12. **Numerosity.** Plaintiff is informed and believes, and upon such information and belief alleges, that the Plaintiff Class is sufficiently numerous that joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with litigation on an individual basis.

13. **Adequacy of Representation.** The Plaintiff Class will be well represented by the class representative and class counsel. Plaintiff appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case. Plaintiff can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members. Class counsel have the necessary resources, experience and ability to prosecute this case on a class action basis.

14.    **Common Questions of Law and Fact Are Predominant.**

Questions of law and fact common to the class predominate over questions affecting only individual class members:

A.    **Common Questions of Fact.** This case presents numerous questions of fact that are common to all class members claims. Defendant has engaged in a standardized course of conduct vis-à-vis Plaintiff and class members, and their injuries arise out of that conduct. Plaintiff is informed and believes, and upon such information and belief alleges that, the case arises out of a common nucleus of fact because, among other things, the junk faxes at issue advertised Seaboard property, goods or services; the junk faxes lacked the disclosures required by the Opt-Out Notice Requirements; and the junk faxes are the product of an organized fax-blasting campaign targeting the class.

B.    **Common Questions of Law.** The case presents numerous common questions of law, including, but not limited to:

(1)    whether the faxes at issue advertise the commercial availability or quality of property, goods or services and therefore fall within the ambit of the JFPA and FCC regulations;

(2)    Defendant's mode and method of obtaining the telephone numbers to which the faxes at issue were sent and whether that mode and method complied with the requirements of § (b)(1)(C)(ii) and FCC regulations;

(3)    whether Defendant complied with the Opt-Out Notice Requirements of the JFPA and FCC regulations, and the legal consequences of the failure to comply with those requirements;

6

(4)     what constitutes a knowing or willful violation of the JFPA within the meaning of § (b)(3);

(5)     whether Defendant committed knowing and/or willful violations of the JFPA and/or FCC regulations;

(6)     whether damages should be increased on account of Defendant's knowing and/or willful violations of the JFPA and/or FCC regulations and, if so, by what amount; and

(7)     what injunctive relief as prayed for in the Complaint is warranted.

15.     **Appropriate Method for Fair and Efficient Resolution of the Controversy.** A class action is an appropriate method for the fair and efficient adjudication of this case for several reasons, including:

A.     Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant.

B.     Questions of law and fact common to members of the class, including those identified in paragraph 14, predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

C.     Absent class certification there is a possibility of multiple individual

7

cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

   D. Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action. Because the statutory minimum damage is $500 per violation and the JFPA does not authorize an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendant's violations would be grossly uneconomical. As a practical matter, the claims of the vast majority of the Plaintiff Class are not likely to be redressed absent class certification.

   E. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the cost of litigation among class members in relationship to the benefits received.

### Claim for Relief for Violations of the JFPA

  16. **Incorporation.** Plaintiff and the Plaintiff Class reassert and reallege the allegations set forth in paragraphs 1 through 15, above.

  17. **Defendant's Violations of the Act and FCC Regulations.** Commencing within four years preceding the filing of this action, including, without limitation, on September 16, 2009, and on January 11, 2011, Defendant violated the JFPA and FCC regulations by, among other things, sending to the United States, unsolicited advertisements and/or advertisements that violate the Opt-Out Notice Requirements, via facsimile from telephone facsimile machines, computers, or other devices to telephone facsimile machines via facsimile telephone numbers of Plaintiff and members of the

8

Plaintiff Class.

18.     **Sender.** Defendant is a sender of the junk faxes at issue because it is an entity on whose behalf they were sent and/or whose goods or services are advertised or promoted in such faxes within the meaning of 47 C.F.R. § 64.1200(a)(4), (f)(10).

19.     **Private Right of Action.** Under § (b)(3), Plaintiff has a private right of action to bring this claim for damages and injunctive relief on behalf of itself and on behalf of the Plaintiff Class to redress Defendant's violations of the JFPA and FCC regulations.

20.     **Injunctive Relief.** Plaintiff is entitled to have preliminary and permanent injunctions entered to: (1) prohibit Defendant, its employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with them, from committing further violations of the JFPA and FCC regulations, and thereby, among other things, prohibiting Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending any further unsolicited faxed advertisements to any person or entity or sending faxed advertisements that do not comply with the Opt-Out Notice Requirements; (2) require Defendant to deliver to Plaintiff all records of facsimile advertisements sent commencing within four years preceding the filing of this action, including all content sent via facsimile, fax lists, and transmission records; (3) require Defendant to adopt ongoing educational, training and monitoring programs to ensure compliance with the JFPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendant to provide written notice to all persons and entities to whom Defendant sent, via facsimile transmission, advertisements in violation the JFPA and/or FCC regulations, warning such persons and entities that the

9

faxing of unsolicited advertisements, or advertisements that do not comply with the Opt-Out Notice Requirements, violates the JFPA and that they should not be led or encouraged in any way by Defendant's violations of the JFPA and/or FCC regulations to send advertisements of their own that violate the JFPA and/or FCC regulations; and (5) require Defendant to conspicuously place on the homepage of its website the warnings contained in (4) of this paragraph.

21. **Damages.** Plaintiff and members of the Plaintiff Class are entitled to recover the minimum amount of $500 for each violation by Defendant of the JFPA and FCC regulations, as expressly authorized by § (b)(3). In addition, Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, also authorized by § (b)(3).

**Prayer for Relief**

WHEREFORE, Plaintiff and the Plaintiff Class pray for relief against Defendant:

1. Certifying a class described in paragraph 10 of the Complaint;

2. Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

3. Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

4. Awarding statutory damages in the minimum amount of $500 for each violation of the JFPA and/or FCC regulations and the trebling of such statutory damages,

10

in an overall amount not less than $1,000,000, exclusive of interest and costs, according to proof;

     5.    Entering of preliminary and permanent injunctions requested in paragraph 20 of the Complaint;

     6.    Ordering payment of Plaintiff's costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

     7.    For prejudgment interest; and

     8.    For such other and further relief as the Court shall deem just and proper.

### Jury Demand

Plaintiff demands trial by jury on all issues triable by jury.

DATED: September 10, 2013

By: _____

One of the Attorneys for Plaintiff Craftwood Lumber Company and for all others similarly situated

Charles R. Watkins
Email: charlesw@gseattorneys.com
Guin, Stokes & Evans LLC
321 South Plymouth Court, Suite 1250
Chicago, IL 60604
(312) 878-8391

4812-4673-5635.7

11

# Exhibit 1

SEP-16-2009  16:58       SEABOARD                    603 598 2283    P.01



## Seaboard International
## Forest Products, LLC
22F Cotton Road, Nashua, New Hampshire, 03063
Tel: (603) 521-3700  Main Fax (603) 598-2283

09-T804352.06

FAX TRANSMISSION

From:        Chris Hodson          Seaboard International      Website: www.sifp.com
Questions ?  Call (800) 669-6800 ext: 232    22F Cotton Rd.
             Fax (603) 598-2283              Nashua, NH 03063-6059
             E-mail: chris.hodson@sfctg.com

To:___ DOUG

Company:___ CRAFTWOOD HARDWARE & LUMBER

Fax:___ 847-831-2805

Date:___ SEPTEMBER 16, 2009_____

Time:_____     Pages:_____ (including this one)

---

## CALCIUM CHLORIDE      EARLY BUY

50 LB. BAG PELLETS   $___ 9.89

50 LB. BAG FLAKES    $___ 8.79

PURCHASE BY 9/30/09, RECEIVE BY 10/31/09, NET 12/1/09

18 PALLETS PER TRUCK – 50 BAG PALLETS

ALL PRICES ARE DELIVERED

CAN MIX PELLETS WITH FLAKES

TO ORDER, CALL CHRIS @ SEABOARD INTERNATIONAL, 1-800-669-6800 x 232

SEP-16-2009  16:58        SEABOARD                    603 598 2283      P.02



**Seaboard International**
**Forest Products, LLC**
22F Cotton Road, Nashua, New Hampshire 03063
Tel (603) 881-3700  Main fax (603) 598-2283

═══════════════════════════ **FAX TRANSMISSION** ═══════════════════

From:      *Chris Hodson*              Seaboard International       Website: www.sifp.com
Questions?  Call (800) 669-6800 ext: 732    22F Cotton Rd.
           Fax (603) 598-2283            Nashua, NH 03063-6059
           E-mail: chris.hodson@fctg.com

To:  __DOUG__

Company:

Fax:

Date: _____SEPTEMBER 16, 2009_____

Time:              Pages:        (including this one)



---

# HALITE ROCK SALT — EARLY PURCHASE

25lb.
      100 bags/pallet, 18 pallets/truck  $_ _

50lb:
      49 bags/pallet, 18 pallets/truck   $_ 3.74

80lb:
      30 bags/pallet, 18 pallets/truck   $_ 5.48

50lb:  blend sodium, calcium, potassium  (-10°F)  $6.09

### WE CAN BILL THROUGH "DO IT BEST".

#### ALL PRICES ARE DELIVERED

TO ORDER, CALL CHRIS @ SEABOARD INTERNATIONAL
1-800-669-6800 X 232

---

TOTAL P.02

# Exhibit 2

**seaboard International forest products, inc.**

P.O. Box 6069 Nashua New Hampshire 03063-6069
(800) 883-3700 Fax (603) 598-2280

**FAX TRANSMISSION**

From: **Tom Lizotte**
Questions? Call (800) 669-6800 ext. 258
Fax (603) 598-2280

*David*

Seaboard International
P.O. Box 6059
Nashua, NH 03063-6059

Company: _____

Fax: _____

Date: _____

Time: _____ Pages: _____ (Including this one)

---

## ROCK SALT

50lb: 49 bags/skd 18 pallets **3.99**

ALL PRICES ARE DELIVERED

TO ORDER, CALL
TOM @ SEABOARD INTERNATIONAL
1-800-669-6800 x 258

TOTAL P.01

PLAINTIFF'S DEMAND FOR A JURY

**FILED**

SEP 10 2013

*Keith Brin*
CIRCUIT CLERK

STATE OF ILLINOIS )
               ) SS
COUNTY OF LAKE )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

*Craftwood Lumber Company* )
                                  )
                                  )       **13 L 661**
               Vs.             )
                                    )    GEN. NO.
*Seaboard Int'l Forest Products,* )
*LLC* )

<u>JURY DEMAND</u>

The plaintiff's in the above entitled cause demand a jury for the trial of said cause.

*Craftwood Lumber Company*

Plaintiffs

By *Charles R Watkins*
           Their Attorneys
      *Gvin, Stokes + Evans LLC*
(This demand must be filed by plaintiffs at the time the action is commenced, otherwise plaintiff shall be deemed to have
waived a jury.)       *321 S. Plymouth Ct, St. 1250*
               *Chicago, IL 60604*
              *312-878-8391*

171-109 rev 2/02

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

COUNTY DEPARTMENT, LAW DIVISION

Craftwood Lumber Company, an Illinois
corporation, individually and on behalf
of all others similarly situated,

       Plaintiff,

    v.

Seaboard International Forest Products,
LLC, a Delaware limited liability
company,

       Defendant.

No.

13L 661

**Notice of Hearing on Plaintiff's Motion for Class Certification and Motion for Class
Certification**

To Defendant Seaboard International Forest Products, LLC, and its attorneys:

PLEASE TAKE NOTICE that on DEC 17, 2013, commencing at 9 ,
the motion by Plaintiff Craftwood Lumber Company for class certification described
below shall be presented for hearing before the Hon. XY72 in
courtroom 505 of this Court, situated at 18 N. County Street, Waukegan, IL 60085.

**Plaintiff's Motion for Class Certification [735 ILCS 5/2-801]**

1.    Plaintiff Craftwood Lumber Company moves this Court, under authority of
735 ILCS 5/2-801, for an order certifying the following Plaintiff Class:

1

All persons and entities that were at the time subscribers of telephone numbers to which a facsimile transmission was sent, commencing within four years preceding the filing of this action, which facsimile transmission discusses, describes, or promotes Defendant's property, goods or services, including, without limitation, the facsimile transmission of Exhibits 1 and 2 attached [to the Complaint]. Plaintiff reserves the right to amend the class definition following completion of class certification discovery.

2.      This case is appropriate for class treatment for the following reasons:

        (a)      The Plaintiff Class consists of numerous members nationwide with claims too small to warrant individual actions and joinder of all members is impracticable.

        (b)      There are questions of law and fact common to all Class members, and those common questions predominate over individual questions, if any.

        (c)      Plaintiff and its attorneys will provide fair and adequate representation to the Class.

        (d)      A class action is an appropriate method to resolve this dispute and provides the best means for the fair and efficient adjudication of Class member claims.

3.      In support of this motion, Plaintiff is concurrently filing its Memorandum in Support of Motion for Class Certification, the Affidavits of David Brunjes, C. Darryl Cordero, and Scott Z. Zimmermann, and Exhibits in Support of Plaintiff's Motion for Class Certification.

WHEREFORE, Plaintiff prays that the Court certify the Class as proposed above and designate Plaintiff as Class Representative and its attorneys as Class Counsel. In the alternative, Plaintiff prays that the Court, prior to ruling on certification, allow Plaintiff to conduct class related discovery and file supplemental briefing in support of class certification.

Dated: September 10, 2013

By:_____
       Charles R. Watkins

       One of the Attorneys for Plaintiff
       Craftwood Lumber Company and for all
       those similarly situated

       Charles R. Watkins
       E-mail: charlesw@gseattorneys.com
       Guin, Stokes & Evans LLC
       321 South Plymouth Court, Suite 1250
       Chicago, Illinois 60604
       Telephone: (312) 878-8391

Craftwood v. Seaboard - Notice of Motion for Class Cert.doc

3

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

COUNTY DEPARTMENT, LAW DIVISION

RECEIVED
LAKE COUNTY, IL
SEP 10 2013
KEITH BRIN
Clerk of the Circuit Court

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | 13 L 661 |
| v. | |
| Seaboard International Forest Products, LLC, a Delaware limited liability company, | |
| Defendant. | |

**Plaintiff's Memorandum In Support of**

**Motion for Class Certification**

## I.    Introduction

This class action seeks relief from Defendant for its junk fax advertising in violation of the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227.[1]  Defendant Seaboard International Forest Products, LLC ("Seaboard") has violated the JFPA by blasting an ongoing stream of junk faxes to Plaintiff Craftwood Lumber Company ("Craftwood") and other consumers and businesses nationwide.

This is the prototypical case for which the class action procedure was designed. Seaboard engaged in a common course of conduct toward class members: Its junk faxes advertise Seaboard products; Seaboard sent all junk faxes in the same apparent manner; and Seaboard's junk faxes fail to include mandatory disclosures to recipients advising them of their right to stop future junk faxes and explaining how to exercise that right, in direct violation of the statute.  In fact, the Seaboard junk faxes received by Craftwood and attached to the Complaint contain *no* opt-out notice whatsoever, a *per se* violation of the law.

Further, all Seaboard junk faxes are subject to the same federal statute, the JFPA, which provides the sole basis for all claims.  And all class members are entitled to the same statutory damages and injunctive relief under the act.

At first glance the timing of this motion might appear a bit early.  But this was all but required by a common tactic of defendants to avoid class-wide accountability by making "pick-off" offers to the named plaintiff before a motion for class certification is filed.  The Illinois Supreme Court has permitted the tactic.  *See Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 456 (2011).  Under the court's decision, "the important

---

[1]    The JFPA amended the Telephone Consumer Protection Act of 1991 ("TCPA"). Unless otherwise noted, all statutory references in this memorandum are to the JFPA, the version of 47 U.S.C. § 227 in effect during the class period alleged.

consideration in determining whether a named representative's claim is moot is whether that representative filed a motion for class certification prior to the time when the defendant made its tender. Where the named representative has done so, and the motion is thus pending at the time the tender is made, the case is not moot..." *Id.*

To protect against this "gotcha" tactic, Craftwood has filed this motion with its complaint, an approach recommended by the Seventh Circuit. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011); *see also Falls v. Silver Cross Hosp. and Med. Ctrs.*, No. 13 C 695, 2013 WL 2338154 (N.D. Ill. May 24, 2013) [noting practice of protective certification motions to block pick-off tactic]; *Radha Geismann, M.D., P.C. v. Allscripts Healthcare Solutions, Inc.*, 764 F. Supp. 2d 957, 958-59 (N.D. Ill. 2011) [same]. Craftwood believes that discovery will only bolster the compelling case for certification, and asks the Court to permit additional briefing and defer hearing the motion until discovery can be had.[2]

## II.     The Legal Prohibition Against Junk Faxes

Craftwood is a Highland Park hardware store that serves the North Shore region. (Brunjes Aff. ¶ 1.) Seaboard is a national distributor and direct marketer of building and supply products. (Ex. 3.) Craftwood has no business relationship with Seaboard and did not give Seaboard permission to send junk faxes. (Brunjes Aff. ¶ 3.) Craftwood seeks to stanch the tide of junk faxes, which it strongly believes hurts businesses and consumers alike. It has filed this action after repeated complaints about junk fax (including

---

[2]     "[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied." *Ondes v. Monsanto Co.*, No. 4:11CV197JAR, 2011 WL 6152858 at *9-10 (E.D. Mo. Dec. 12, 2011), citing and quoting *Weatherly v. Michael Foods, Inc.*, No. 8:08CV153, 2008 WL 5110917 (D. Neb. Dec. 2, 2008), and *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 570–72 (2d Cir.1982); *see generally*, 7A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE CIVIL § 1785.3 (3d ed 2005) [noting that

*Footnote continued on next page*

-2-

Seaboard's junk faxing) to the Federal Communications Commission, with the agency taking no action. (*Id.* ¶¶ 2, 4.)

The JFPA makes it "unlawful" for any person to send an "unsolicited advertisement" by facsimile transmission. § 227(b)(1)(C). A fax is an "advertisement" falling within the ambit of the JFPA if it is "any material advertising the commercial availability or quality of any property, goods, or services." § 227(a)(5). Faxes are unsolicited if they are sent without recipients' prior express permission, or implied permission resulting from an "established business relationship. § 227(a)(5) and (b)(1)(C)(i)-(iii). These are the only two statutory defenses available under the JFPA.

Congress originally passed the anti-junk fax law in 1991 in response to an outpouring of complaints about the "serious problems caused by the junk fax." *Kaufman v. ACS Sys., Inc.,* 2 Cal. Rptr. 3d 296, 317 (Cal. Ct. App. 2003). Congress made junk faxes illegal because they impose unfair burdens. H.R. Rep. No. 102-317, 1st Sess., p. 10 (1991). Junk faxes "substantially interfere with a business or residence" and "shift nearly all of the advertiser's printing costs to the recipient of the advertisement..." *Texas v. American Blastfax, Inc.,* 121 F. Supp. 2d 1085, 1090-91 (W.D. Tex. 2000).

Despite this prohibition against junk faxes, American businesses and consumers continued to be "besieged" with junk faxes, stymied by advertisers' refusal to comply with their requests to stop. FCC Report and Order on Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (June 26, 2003). Congress responded in 2005 by passing the JFPA, which added important consumer protections in the form of opt-out notice requirements. These requirements mandate that fax advertisers provide a "clear and conspicuous" notice on the first page of their faxes. Among other

---

*Footnote continued from previous page*

the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery].

things, the notice must tell recipients that they have a right to stop future junk faxes and how to exercise that right; must tell recipients that the advertiser's failure to honor an opt-out request within 30 days is illegal; and must provide a cost-free mechanism for recipients to exercise their opt-out rights. § 227 (b)(1)(C)(iii), (b)(2)(D),(E); 47 C.F.R. § 64.1200(a)(4)(iii)-(iv).

There are serious consequences to the fax advertiser if it fails to comply with the opt-out notice requirements. First, the advertiser cannot assert either of the two statutory defenses under the JFPA. Secondly, the failure to comply with the opt-out notice requirements separately constitutes a violation of the JFPA/FCC regulations. *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013); *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 561 (C.D. Cal. 2012).

The law establishes a minimum statutory damage of $500 per transmission—*without* the need to show any actual damage. § 227(b)(3). The minimum damage was set by Congress "to be fair to both the consumer and the telemarketer." 137 Cong. Rec. S16205 (Nov. 7, 1991). A court also may increase statutory damages by up to three times if the defendant has violated the act either "knowingly" or "willfully." § 227(b)(3).

## III.    Seaboard's Junk Fax Campaign

Seaboard is a nationwide distributor and trader of building supplies, serving the largest retail lumber yards, home centers and manufacturers. (Compl. ¶ 8; Ex. 3.) Seaboard has resorted to junk faxes to promote its products. (Compl. ¶¶ 2, 8, 17; Brunjes Aff. ¶ 3; Exs. 1, 2.) The junk fax attached as Exhibit 1 to this motion, for instance, promotes Seaboard's calcium chloride and halite rock salt products. It invites recipients to order by contacting "Chris @ Seaboard International, 1-800-669-6800 x 232." The fax also invites recipients to visit the website, www.sifp.com, which itself is an advertisement promoting Seaboard and its products. (Ex. 3.) The junk fax attached as

-4-

Exhibit 2 to this motion also promotes the sale by Seaboard of rock salt. It invites recipients to order by calling "Tom @ Seaboard International 1-800-669-6800 x 258."

Based on its counsel's experience with junk faxes, Craftwood believes these faxes are the veritable "tip of the iceberg." (Zimmermann Aff. ¶ 13.) Building suppliers typically do not craft advertising campaigns to target a single customer like Craftwood. Rather, they develop the artwork and layout to mass broadcast their ads to numerous recipients, which often number in the thousands or even the tens of thousands. Craftwood is confident discovery will reveal a fax advertising campaign of widespread dimensions.

IV.    **The Proposed Class**

Craftwood moves to certify the follow class:

> All persons and entities that were at the time subscribers of telephone numbers to which a facsimile transmission was sent, commencing within four years preceding the filing of this action, which facsimile transmission discusses, describes, or promotes the property, goods or services of Defendant and/or its parent, subsidiary or affiliated companies, including without limitation, the facsimile transmissions attached as Exhibits 1 and 2 [to the Complaint].

V.    **The Weight of Authority Strongly Favors Certification of TCPA Classes**

In recent years there have been numerous successful prosecutions of nationwide classes under the act. In 2004, one court surveyed the decisional landscape and observed that "the vast majority of courts that have addressed the issue of class certification in TCPA suits and [have] found that class certification is appropriate." *Clean Carton Co. v. Prime TV, LLC*, No. 01 AC-11582, 2004 TCPA Rep. (TCPALaw.com) 1294, slip op. at 15 (Mo. Cir. Ct. July 13, 2004). Last month the Seventh Circuit observed that "[c]lass certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Holtzman v. Turza*, No. 11-3188,__F.3d__, 2013 WL 4506176, at *2 (7th Cir. Aug. 26, 2013); *see*

*also Florida First Fin. Group, Inc. v. Magnum Painting Inc.*, No. 10-00481, 2010 TCPA
Rep. (TCPALaw.com) 2046, slip op. at 5 (Fla. Cir. Oct. 21, 2010) ("[t]he weight of
authority supports the certification of TCPA class actions") and *G.M. Sign, Inc. v. Group
C Commc'ns, Inc.*, No. 08-cv-4521, 2010 WL 744262, at *4 (N.D. Ill. Feb. 25, 2010).

The common thread in the case law is the principle that mass fax-blasting
violations are tailor-made to the class action remedy. Courts have concluded that junk
fax blasting presents a common nucleus of operative fact and common legal issues that
makes a case well suited to class-wide adjudication.

The advent of the JFPA in 2005 has accelerated this trend. Decisions that denied
class certification under former law did so because of perceived "individualized"
permission-based issues, generally finding that "predominance" or "superiority"
requirements had not been met.[3] But here there are no such individualized issues.
Seaboard's violations of the opt-out notice requirements, enacted in 2005, make any
claimed permission-based statutory defenses irrelevant as a matter of law. *Holtzman*,
2013 WL 4506176, at *2; *see also Nack*, 715 F.3d at 683; *Vandervort*, 287 F.R.D. at 561.

## VI.     This Case Satisfies the Requirements for Class Certification

Class certification is governed by section 2-801 of the Illinois Code of Civil
Procedure, 735 ILCS 5/1-101, *et seq.* Section 2-801 prescribes four requirements for
class certification:

    (1)    The class is so numerous that joinder of all members is impracticable.

---

[3]     *E.g., Kenro, Inc. v. Fax Daily*, 962 F. Supp. 1162 (S.D. Ind. 1997); *Forman v.
Data Transfer, Inc.*, 64 F.R.D. 400, 403 (E.D. Pa. 1995); *Carnett's, Inc. v. Hammond*, 610
S.E.2d 529 (Ga. 2005).

(2)     There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)     The representative parties will fairly and adequately protect the interests of the class.

(4)     The class action is an appropriate method for the fair and efficient adjudication of the controversy.

Because section 2-801 is patterned after rule 23 of the Federal Rules of Civil Procedure, federal decisions interpreting rule 23 are persuasive authority on questions of class certification in Illinios. *Mashal v. City of Chicago*, 2012 Ill. 112341, ¶ 27; *see also Schlessinger v. Olsen,* 86 Ill. 2d 314, 320, 427 N.E.2d 122 (1981). In determining whether the proposed class should be certified, the court accepts the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007); *Clark v. TAP Pharm. Prods.*, 343 Ill. App. 3d 538, 545 (5th Dist. 2003). As discussed below, this case easily satisfies all section 2-801 elements.

**A.     Joinder of All Class Members Is Impracticable**

The first requirement is numerosity. There is no precise, magical number necessary for a class. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Ass'n,* 198 Ill. App. 3d 445, 449-50 (5th Dist. 1990). But both Illinois and federal courts have found that when a proposed class has more than forty individuals, the numerosity requirement is satisfied. *Id.* at 450 (quoting Arthur R. Miller, *An Overview of Federal Class Actions: Past, Present and Future*, Federal Judicial Center, at 22 (1977)). In assessing whether a proposed class meets the numerosity requirement, the Court may "make commonsense assumptions that support a finding of numerosity." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). Arithmetic certainty is not required. *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("[w]here the exact

size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied").[4]

Among the factors relevant to determination of the numerosity requirement are the number of proposed class members, their geographic dispersion, the ability of individual members to bring suit on their own, judicial economy, and the inconvenience of trying a multitude of individual lawsuits. *Id.*; *see also Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at *3 (N.D. Ill. Aug. 17, 2004); *Flanagan v. Allstate Ins. Co.*, 223 F.R.D. 489, 493 (N.D. Ill. 2004).

The complaint in this case alleges that the Plaintiff Class to whom Seaboard sent its advertisements is numerous. (Compl. ¶ 14.) "General knowledge and common-sense" support this allegation. Seaboard has national sales reach, as reflected in its website and advertisements faxed to Craftwood, a target several states removed from Seaboard's home office in New Hampshire. The junk faxes themselves suggest a widespread distribution: The faxes include sophisticated graphics and generalized product information that classically reflect a large-scale advertisement. (*See id.* Exs. 1, 2.) Experience of Plaintiff's counsel supports the same conclusion. (Zimmermann Aff. ¶ 13.) Joinder of all class members would not just be "impracticable," but impossible.

## B.    The Case Meets the Commonality Requirement

The second section 2-801 element is that common "questions of fact or law" exist, and predominate over questions affecting individual class members. The first sub-element does not mean that there must be a common question of both fact *and* law; rather, a single common question of either fact *or* law is enough. *Miner v. The Gillette*

---

[4]    Courts have held that a JFPA plaintiff need not identify the specific fax numbers to which faxes were successfully sent in order to have a class certified. *Saf-T-Gard Int'l, Inc. v.*

*Footnote continued on next page*

*Co.*, 87 Ill. 2d 7, 17, 428 N.E.2d 478, 483 (1981). Generally, when all class members have been aggrieved by the same or similar misconduct, the commonality requirement is satisfied. *P.J.'s Concrete Pumping Serv., Inc. v. Nextel W. Corp.*, 345 Ill. App. 3d.992, 1003, 803 N.E.2d 1020, 1029 (2d Dist. 2004); *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1074, 530 N.E.2d 994, 998 (1st Dist. 1988). "Once this basic determination has been made, the fact that there may be individual questions...will not defeat the predominating common question." *Miner*, 87 Ill. 2d at 19, 428 N.E.2d at 484-85.

This case arises out of a common nucleus of fact and the JFPA provides the sole basis for all claims. And under the JFPA all members are entitled to same exact relief. Indeed, Seaboard's damages exposure is calculable with mathematical precision. One need only multiply $500 (the minimum statutory damages under the JFPA) by the number of illegal fax transmissions.

It is therefore hardly surprising that the case contains solely common legal issues. Among them are the following issues that can be determined on a class-wide basis:

- Are the faxes "advertisements" under the JFPA?

- Seaboard's mode and method of obtaining the telephone numbers to which the faxes at issue were sent and whether that mode and method complied with the requirements of § (b)(1)(C)(ii) and FCC regulations?

- Did Seaboard comply with the opt-out notice requirements, and the legal consequences of its failure to comply with those requirements?

---

*Footnote continued from previous page*

*Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008); *see also Clearbrook v. Rooflifter, LLC*, No. 08 C 3276, 2010 WL 2635781, at *3 (N.D. Ill. 2010).

- Did Seaboard commit "knowing" or "willful' violations of the JFPA and should damages should be increased on account of any such "knowing" or "willful" violations?

- Is injunctive relief as prayer for in the Complaint warranted?

Common questions predominate in this case. First, when a defendant has acted in the same basic way to all members of a class, courts regard this as predominance of common questions. *Martin v. Heinold Commodities, Inc.*, 139 Ill. App. 3d 1049, 1060 (1st Dist. 1985); *Brooks v. Midas-Int'l Corp.*, 47 Ill. App. 3d 266, 273, 361 N.E.2d 815, 820 (1st Dist. 1977). Similarly, common questions predominate when, as here, the successful adjudication of the class representative's claim will establish the right of recovery or injunctive relief for all other class members. *Clark*, 343 Ill. App. 3d at 548, 798 N.E.2d at 131; *Gordon v. Boden*, 224 Ill. App. 3d 195, 201, 586 N.E.2d 461, 465 (1st Dist. 1991).

In this case predominance is bolstered by a common, outcome-dispositive issue: Whether Seaboard complied with the law's opt-out notice requirements. To sustain *any* defense under the law, Seaboard was required to include, but failed to include, the required opt-out notice of recipients' right to stop future junk faxes. *See Holtzman*, 2013 WL 4506176, at *2; *Nack*, 715 F.3d at 683; *Vandervort*, 287 F.R.D. at 561. As a result, "the single determination as to whether the opt-out notice complied with the statute and regulations promulgated thereunder 'will resolve an issue that is central to the validity of each one of the [class members'] claims in *one stroke*.'" *Vandervort*, 287 F.R.D. at 261 (original emphasis).

These common questions of fact and law predominate over any individual questions. Indeed, there are no individual questions at all–factually, liability-wise or regarding the award of damages and other relief. The second requirement of section 2-801 is satisfied.

### C. Plaintiff Will Fairly and Adequately Represent the Class

This case also satisfies the adequate representation requirement. The purpose of this requirement "is merely to insure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope*, 175 Ill. App. 3d at 1078, 530 N.E.2d at 1000. The class representative's claim need not be identical to the other class members' claims in order for him or her to adequately represent the class; rather, it is enough that a class representative not seek relief antagonistic to the interests of other potential class members. *Id.*; *see also Steinberg*, 69 Ill. 2d at 338-39, 371 N.E.2d at 643.

Here, Craftwood and the class received the same type of faxes, from the same party, in the same common manner. They have the same legal claims and are entitled to the same damages and other relief. There is a perfect nexus between Craftwood's claims and those of the other class members. There are no differing interests between Craftwood and other class members. Craftwood's principal fully understands his representative responsibilities and is prepared to discharge them in the class's interest. (Brunjes Aff. ¶ 5.)

In assessing this element, the Court may consider the qualification of Craftwood's attorneys are highly experienced in class actions and have handled numerous TCPA/JFPA class actions. Co-lead class counsel Scott Zimmermann has prosecuted TCPA/JFPA cases since 1999. In the landmark *Kaufman* decision in California, Zimmermann obtained full recovery for the certified class after six years of hard-fought litigation. (Zimmermann Aff. ¶¶ 8-12.) Zimmermann and co-lead Darryl Cordero have teamed to successfully prosecute a number of junk fax cases. (*Id.* ¶ 11; Cordero Aff. ¶ 7.) Here, another JFPA attorney, Frank Owen, as well as the class action firm, Guin, Stokes

-11-

& Evans LLC, have been added to the team. (Zimmermann Aff. ¶ 12; Cordero Aff. ¶ 7.)[5]
Craftwood's attorneys are "qualified, experienced and generally able to conduct the
proposed litigation." *Miner*, 87 Ill. 2d at 14, 428 N.E.2d at 482.

**D.     A Class Action Is Appropriate and Provides the Best Means for Fair
and Efficient Adjudication of Class Members' Claims**

The final requirement for certification is a finding that a class action will provide
an appropriate method for the fair and efficient adjudication of the controversy. The
Illinois Supreme Court has held that when the first three requirements of section 2-801
have been satisfied, as here, it is "manifest that the final requirement of the statute [also]
is fulfilled." *Steinberg*, 69 Ill. 2d at 339, 371 N.E.2d at 644; *see also P.J.'s Concrete
Pumping*, 345 Ill. App. 3d at 1004, 803 N.E.2d at 1031; *Clark*, 343 Ill. App. 3d at 552,
798 N.E.2d at 134. In analyzing this fourth requirement, the Court may also consider:

> whether a class action: (1) can best secure the economies of time, effort and
> expense, and promote uniformity; or (2) accomplish the other ends of
> equity and justice that class actions seek to obtain.

*Gordon*, 224 Ill. App. 3d at 203, 586 N.E.2d at 467. In addition, class treatment is
found appropriate when it provides the only practical means to provide redress to all class
members. *Id.*

The strong weight of authority favoring certification of junk fax cases is no
accident. The policy objective behind the class action is to encourage individuals, who
may otherwise lack incentive to file individual actions because their damages are limited,
to join with others to vindicate their rights in a single action. *Hansberry v. Lee*, 311 U.S.
32, 41, 61 S. Ct. 115, 118, 85 L. Ed. 22, 27 (1940). The overwhelming majority of courts

---

[5]     Messrs. Zimmermann and Cordero will make *pro hac vice* applications. Messrs.
Owen and Watkins are members of the Illinois bar.

have certified TCPA/JFPA cases precisely because they fit this paradigm. As one Illinois court stressed in granting certification:

> [A] 'controlling factor in many cases is that the class action is the only practical means for class members to receive redress, particularly where the claims are small.' Here, it appears that forcing the class members to pursue their claims individually will make their claims impractical as they will be required to hire counsel in order to receive an award of $500. This result would seriously undermine the goal of the TCPA scheme." *Overlord Enters., Inc. v. Wheaton-Winfield Dental Assocs., Ltd.*, No. 04 CH 1613, 2006 WL 4591049, at *8 (Ill. Cir. Ct. June 9, 2006) (citation omitted).

Here, class adjudication is not merely the superior form of dispute resolution; the economics of litigation make it the only practical means to hold Seaboard accountable for its violations of law. Because the JFPA lacks an attorney's fees clause, individual litigants would sustain legal fees far exceeding their expected recovery or, even less likely, find lawyers willing to prosecute individual claims on a contingency basis. *ESI Ergonomic Solutions, LLC v. UA Theatre Cir., Inc.*, 50 P.3d 844, 851 (Ariz. Ct. App. 2002); *accord, Lampkin v. GGH, Inc.*, 146 P.3d 847, 855 (Okla. Ct. App. 2006). Accordingly, without certification, the vast majority of class members would be left without a remedy. Few, if any, class members would be likely to file their own lawsuit.

This would also have the undesirable effect of allowing Seaboard to benefit from its illegal advertising. As one court stressed, "a marketer could engage in widespread unsolicited fax advertising, reap the benefits of this inexpensive advertising medium which his law abiding competitors rightfully refuse to employ, and then pay a handful of small claims judgments as merely a 'cost of doing business.' Such a scenario militates in favor of finding the class action to be the superior form of litigation." *Clean Carton*, slip op. at 14; *accord, Kaufman*, 2 Cal. Rptr. 2d at 327.

Conversely, there is no advantage to individual control over the prosecution of claims from either a judicial or litigant viewpoint. Judge Mullin recently stressed that "[c]lass certification regarding Defendant's alleged TCPA violations would promote efficiency and uniformity by having one forum, prevent the flooding of individual cases

-13-

in Illinois courts or the bringing of none as a result of increased burden to individual litigants. Certification would also prevent waste of judicial resources, and aid judicial administration." *C.E. Design Ltd. v. Matrix LS, Inc.*, No. 05L269, 2010 TCPA Rep. (TCPALaw.com) 1974, slip op. at 9 (Ill. Cir. Ct. Apr. 16, 2010). As another court observed in comments equally applicable here, "the economies of time, effort and expense, and uniformity will be served by certifying the Plaintiff's class. The predominant question of the Defendant's violation of the TCPA will be resolved in one forum and thus promote efficiency and uniformity." *Overlord Enterprises*, 2006 WL 4591049, *7.

Finally, "class relief is superior because it will educate the public about the TCPA and its junk faxing prohibition." *Clean Carton*, slip op. at 14. In the context of a consumer protection law, this is "desirable and should be encouraged." *Id.*

These considerations further the statutory goal of maximum enforcement. As one court of appeal stressed, "[The TCPA] is designed to eradicate junk faxes and is recognized as a remedial consumer protection statute." *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 750 (Ohio C.P. 2003). As another observed, the "purpose of the TCPA is to make it *as easy as possible* for injured plaintiffs to seek recovery within the terms of the statute..." *Sznyter v. Malone*, 66 Cal. Rptr. 3d 633, 644 (Cal. Ct. App. 2007) (emphasis supplied).

## VII. Conclusion

This case is well suited for class treatment. The proposed class is numerous with claims too small to warrant individual prosecution. Common questions of fact and law predominate. Indeed, there are no individualized issues at all. Craftwood's claims are identical to those of the other class members, and Craftwood has retained counsel well qualified to represent the class. As a practical matter, a class action is the only way

-14-

members will ever obtain relief. Judicial economy and uniformity will be served by certifying this class.

Craftwood requests that the Court certify the Class as proposed above and designate Craftwood as Class Representative and its attorneys as Class Counsel. In the alternative, Craftwood requests that the Court, prior to ruling on certification, allow Craftwood to conduct class related discovery and file supplemental briefing in support of class certification.

Dated: September 10, 2013

By:_____
                Charles R. Watkins

One of the Attorneys for Plaintiff
Craftwood Lumber Company and for all
those similarly situated

Charles R. Watkins
E-mail:  charlesw@gsattorneys.com
Guin, Stokes & Evans LLC
321 South Plymouth Court, Suite 1250
Chicago, IL 60604
Telephone:  (312) 878-8391

4811-8676-8137.5

-15-

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | |
| v. | |
| Seaboard International Forest Products, LLC, a Delaware limited liability company, | |
| Defendant. | |

**Exhibits in Support of Plaintiff's Motion for Class Certification**

1. Seaboard Junk Fax (September 16, 2009) (Also attached as Exhibit 1 to Complaint).

2. Seaboard Junk Fax (August 12, 2011) (Also attached as Exhibit 2 to Complaint).

3. Pages from Seaboard website (URL: www.sifp.com) (Also attached as Exhibit 3 to Affidavit of Darryl Cordero).

4. Affidavit of Scott Brunjes

5. Affidavit of Scott Zimmerman, Esq.

1

6. Affidavit of Darryl Cordero, Esq.

4827-6417-6661.1

2

# Exhibit 1

SEP-16-2009 16:58 SEABOARD 603 598 2283 P.01



**Seaboard International Forest Products, LLC**
22F Cotton Road, Nashua, New Hampshire 03063
Tel: (603) 883-3700 Main Fax: (603) 598-2280

09-7004352.46

**FAX TRANSMISSION**

| | | |
|---|---|---|
| From: | Chris Hodson | Seaboard International |
| Questions ? | Call (800) 669-6800 ext: 232 | 22F Cotton Rd. |
| | Fax: (603) 598-2283 | Nashua, NH 03063-6059 |
| | E-mail: chris.hodson@fctg.com | Website: www.sifp.com |

To: DOUG

Company: CRAFTWOOD HARDWARE & LUMBER

Fax: 847-831-2805

Date: SEPTEMBER 16, 2009

Time: _____ Pages: _____ (including this one)

---

## CALCIUM CHLORIDE    EARLY BUY

50 LB. BAG PELLETS    $ ___ 9.89

50 LB. BAG FLAKES    $ ___ 8.79

PURCHASE BY 9/30/09, RECEIVE BY 10/31/09, NET 12/1/09

18 PALLETS PER TRUCK – 50 BAG PALLETS

ALL PRICES ARE DELIVERED

CAN MIX PELLETS WITH FLAKES

TO ORDER, CALL CHRIS @ SEABOARD INTERNATIONAL 1-800-669-6800 x 232

SEP-16-2009  16:58       SEABOARD              603 598 2283    P.02



## Seaboard International
## Forest Products, LLC

22F Cotton Road, Nashua New Hampshire 03063
Tel: (603) 891-1700  Main Fax (603) 598-2283

**FAX TRANSMISSION**

From:      **Chris Hodson**            Seaboard International      Website: www.sifp.com
Questions?  Call (800) 669-6800 ext. 232   22F Cotton Rd.
           Fax (603) 598-2283          Nashua, NH 03063-6059
           E-mail: chris.hodson@fctg.com

To:__DOUG

Company:

Fax:

Date:____SEPTEMBER 16, 2009_____

Time:_____Pages:_____(including this one).



---

# HALITE ROCK SALT — EARLY PURCHASE

25lb.
     100 bags/pallet, 18 pallets/truck  $__

50lb:
     49 bags/pallet, 18 pallets/truck   $__ 3.74

80lb:
     30 bags/pallet, 18 pallets/truck   $__ 5.48

50lb:  blend sodium, calcium, potassium  (-10°F)  $6.09

### WE CAN BILL THROUGH "DO IT BEST".

### ALL PRICES ARE DELIVERED.

### TO ORDER, CALL CHRIS @ SEABOARD INTERNATIONAL
### 1-800-669-6800 x 232.

---

TOTAL P.02

# Exhibit 2

 **seaboard International forest products, inc.**

P.O. Box 6059  Nashua, New Hampshire 03063-6059
(603)883-3700   Fax (603) 898-2280

## FAX TRANSMISSION

From:        *Tom Lizotte*                    Seaboard International
Questions ?  Call (800) 669-6800 ext: 258     P.O. Box 6059
             Fax (603) 598-2280               Nashua, NH 03063-6059

Dourd

Company: _____

Fax: _____

Date: _____

Time: _____  Pages: _____  (Including this one)

---

**ROCK SALT**

50lb:
      49 bags/skd 18 pallets         **3.99**

ALL PRICES ARE DELIVERED

TO ORDER, CALL
TOM @ SEABOARD INTERNATIONAL
1-800-669-6800 x 258

# Exhibit 3

Forest Products Wholesaler: Trader of Lumber and Building Materials                Page 1 of 2



22F Cotton Road

Nashua, NH 03063

800.669.6800

603.881.3700

- Company
  - Message From The President
  - Mission, Values, Vision
  - Community and Environment
  - Legal and Ethical Conduct
    - Purchase Order Terms & Conditions
    - Order Confirmations Terms and Conditions
- Business Units/Products
- Careers
- Contact Us
- Industry Resources

# Company

Customers rely on us to put together the best transaction for them in terms of delivery, volume, and price. We serve the largest retail lumber yards, home centers and manufacturers around the country, but have the flexibility to satisfy the needs of smaller customers as well. Producers depend on Seaboard to bring a full range of products and grades to 1,500 users on a daily basis. We are proud of our record of success. It is a reflection of the continuing service we provide to our customers and suppliers. Seaboard International's mission is to build relationships such that we become a factor in our customers' and suppliers long-term planning.

Meeting customer and supplier needs — both long and short-term — is our number one priority, and we have structured our business to do just that. Our state-of-the-art information system keeps us on top of customer orders, prices, delivery schedules, and market volatility with a keystroke.

- Off-Shore Lumber & Panels Department
- Non-Commodity Products Department

## Products



- Agency Certified Structural Plywood & OSB
- Bark Mulch
- Boards
- Douglas Fir Studs, and dimension lumber both green and dry
- Eastern White Pine Selects, Commons, Shop Grades, Pattern Stock
- ESLP Studs and dimension lumber
- Fencing
- Finger-Joint Boards
- Hem/Fir Studs and dimension lumber (green & dry)
- High Performance Underlayment
- Ice Melter



- Imported Commons, Finger Joint Boards
- Imported OSB & Plywood
- Landscaping Ties
- Lattice
- Machine Stress Rated (MSR) Lumber
- Manure
- Mill Fall Downs in both Plywood & OSB
- Peat Moss
- Plywood and OSB Siding
- Plywood Siding
- Plywood Sheathing
- Ponderosa Pine Commons
- Salt
- Shavings
- Southern Pine Dimension Lumber, Commons



- Southern Pine Stress Related Lumber
- Southern Pine Boards
- Southern Pine Timbers
- SPF Studs
- SPF Dimension Lumber
- SPF Strips
- SPF Boards
- SPF Re-manufactured product
- SPF Machine Stress Related Lumber
- SPF Finger joint studs and dimension lumber



- SPF Studs and dimension lumber, both green and dry
- SPF, Hem/Fir, Douglas Fir Machine Stress Related Lumber
- SPF Finger Joint studs and dimension lumber
- Sturdi Floor Plywood & OSB
- Sturdi Floor Plywood & OSB
- White Pine Timbers (Green & Kiln dried)
- Wood Pellets
- Decking
- Roofing Material, Shingles

Visit our Seaboard Seasonal Site

© Copyright 2013. Seaboard International Forest Products, LLC

Website part of MESH LiveBuild Network

http://www.sifp.com/business-units-products/.                    9/6/2013



22F Cotton Road

Nashua, NH 03063

800.669.6800

603.881.3700

- Company
    - Message From The President
    - Mission, Values, Vision
    - Community and Environment
    - Legal and Ethical Conduct
        - Purchase Order Terms & Conditions
        - Order Confirmations Terms and Conditions
- Business Units/Products
- Careers
- Contact Us
- Industry Resources

# Company

Customers rely on us to put together the best transaction for them in terms of delivery, volume, and price. We serve the largest retail lumber yards, home centers and manufacturers around the country, but have the flexibility to satisfy the needs of smaller customers as well. Producers depend on Seaboard to bring a full range of products and grades to 1,500 users on a daily basis. We are proud of our record of success. It is a reflection of the continuing service we provide to our customers and suppliers. Seaboard International's mission is to build relationships such that we become a factor in our customers' and suppliers long-term planning.

Meeting customer and supplier needs – both long and short-term – is our number one priority, and we have structured our business to do just that. Our state-of-the-art information system keeps us on top of customer orders, prices, delivery schedules, and market volatility with a keystroke.



Company
----

- Message From The President
- Mission, Values, Vision
- Community and Environment
- Legal and Ethical Conduct
    - Purchase Order Terms & Conditions
    - Order Confirmations Terms and Conditions

© Copyright 2013, Seaboard International Forest Products, LLC

Website part of MESH LiveBuild Network